**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 09-2170

———————

DEMOCRACY RISING PA; TIM POTTS,

Appellants

v.

JOHN R. CELLUCI, in his official capacity as a Member of the
Pennsylvania Judicial Conduct Board; CHARLES A. CLEMENT, JR.,
in his official capacity as a Member of the Pennsylvania Judicial
Conduct Board; CHARLES J. CUNNINGHAM, III,
in his official capacity as a Member of the Pennsylvania Judicial
Conduct Board; CECILIA GRIFFEN GOLDEN, in her official
capacity as a Member of the Pennsylvania Judicial Conduct Board;
PATRICK JUDGE, in his official capacity and as a Member of
the Pennsylvania Judicial Conduct Board; EDWARD R. KLETT,
in his official capacity and as a Member of the Pennsylvania Judicial
Conduct Board; G. CRAIG LORD, in his official capacity and
as a Member of the Pennsylvania Judicial Conduct Board;
CHARLENE R. MCABEE, in her official capacity and
as a Member of the Pennsylvania Judicial Conduct Board;
CYNTHIA N. MCCORMICK, in her official capacity and
as a Member of the Pennsylvania Judicial Conduct Board;
JACK A. PANNELLA, in his official capacity and as a
Member of the Pennsylvania Judicial Conduct Board;
CAROLINE RUDNITSKY, in her official capacity and as a
Member of the Pennsylvania Judicial Conduct Board;
JAMES R. WEAVER, in his official capacity and as a
Member of the Pennsylvania Judicial Conduct Board;
PAUL J. KILLION, in his official capacity as Chief
Disciplinary Counsel of the Pennsylvania Office of Disciplinary
Counsel

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-07-cv-00860)
District Judge: Hon. Christopher C. Conner

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 13, 2010

BEFORE: FISHER, HARDIMAN and COWEN, Circuit Judges

(Filed: May 14, 2010)

OPINION

COWEN, Circuit Judge

Plaintiffs Democracy Rising PA ("Democracy Rising") and Tim Potts appeal from

the order of the United States District Court for the Middle District of Pennsylvania

granting Defendants' motion to dismiss. We will affirm.

I.

This appeal involves a First Amendment challenge to a Pennsylvania judicial canon

governing the speech of candidates for judicial office in the Commonwealth of

Pennsylvania. Pennsylvania selects judges through an election process. Candidates for

judicial office are selected in the first instance in a primary election, which is then

followed by a general partisan election. Once elected, serving judges stand for

"retention," wherein the voters simply decide whether to retain the judge or to remove him

2

or her from office. The campaign conduct of judicial candidates is governed by the Pennsylvania Code of Judicial Conduct, which is a body of regulations promulgated by the Pennsylvania Supreme Court. In turn, the Pennsylvania Board of Judicial Conduct ("Judicial Conduct Board") receives and investigates complaints regarding the campaign activities of sitting judges. If it decides that there is probable cause, the Judicial Conduct Board may file charges and prosecute the individual before the Pennsylvania Court of Judicial Discipline. In addition, lawyers running for judicial office are required to comply with the applicable Canons and are subject to regulation and possible prosecution by the Pennsylvania Office of Disciplinary Counsel ("ODC") before the Disciplinary Board of the Supreme Court of Pennsylvania.

Democracy Rising is a non-partisan organization with a stated mission of enhancing the transparency of the Commonwealth's elected government. Potts serves as the president of this organization. Between January and March of 2007, Plaintiffs designed and distributed a questionnaire to every candidate for judicial election and retention in the Commonwealth.

At this point in time, Canon 7B(1)(c) prohibited judicial candidates from, among other things, "mak[ing] statements that commit or appear to commit the candidates with respect to cases, controversies or issues that are likely to come before the court." Pa. Code of Jud. Conduct Canon 7B(1)(c) (2007). This part of the Canon has generally been referred to as the "Commits Clause."

3

According to Plaintiffs, several candidates indicated a desire and willingness to answer the questionnaire but refused to do so. At least some of these candidates expressly relied on the Canon and its specific "Commits Clause" as justifications for their refusal.

Plaintiffs filed their initial complaint and a motion to enjoin on May 10, 2007, shortly before the primary election. They named as Defendants the individual members of the Judicial Conduct Board as well as Paul J. Killion, who serves as the Chief Disciplinary Counsel of the ODC. The District Court held a hearing on the preliminary injunction motion on May 14, 2007. On the same day, the United States District Court for the Eastern District of Pennsylvania entered an injunctive order in Pennsylvania Family Institute, Inc. v. Celluci, E.D. Pa. Civil Action No. 07-1707 ("PFI"). This order preliminarily enjoined the defendants in that case from, inter alia, enforcing the "Commits Clause" of Canon 7B(1)(c). See Pa. Family Inst., Inc. v. Celluci, 489 F. Supp. 2d 447, 460 (E.D. Pa. 2007) ("PFI I"). Because the preliminary injunction in the PFI litigation concerned the same provision challenged in this case, the District Court granted Defendants' motion to stay the instant matter on July 12, 2007.

On October 16, 2007, the PFI court granted the defendants' motion for summary judgment and vacated the preliminary injunction. See Pa. Family Inst., Inc. v. Celluci, 521 F. Supp. 2d 351, 388 (E.D. Pa. 2007) ("PFI II). It found that Canon 7B(1)(c) was constitutional both facially and as applied, but it did so only after, among other things, accepting the defendants' narrow construction of the "Commits Clause" and specifically

4

deleting the unconstitutional "appear to commit" language from the Canon itself. Id. at 372-87. The PFI court further clarified the meaning and effect of its narrow construction by adopting in full the affidavit submitted by Joseph A. Massa, Jr., the Chief Counsel for the Judicial Conduct Board. Id. at 381-82.

It is uncontested that, on or about March 17, 2008, the Pennsylvania Supreme Court amended Canon 7B(1)(c) by deleting the "appear to commit" language. The revised Canon now prohibits candidates from making "statements that commit the candidate with respect to cases, controversies or issues that are likely to come before the court." Pa. Code of Jud. Conduct Canon 7B(1)(c) (2009) (amended Mar. 17, 2008). It appears that the Judicial Conduct Board's website continued to include the previous version of the Canon, at least until the December 2009 filing of Plaintiffs' appellate brief brought this oversight to the Defendants' attention. According to Defendants, Pennsylvania Rules of Court, including the Code of Judicial Conduct, are officially published in the Pennsylvania Bulletin, and the Pennsylvania Supreme Court order amending the Canon is available through the judicial website.

The District Court reopened this case on April 7, 2008. Plaintiffs then filed a second amended complaint, in which they argued, among other things, that: (1) the ruling in PFI II was wrong on its face and should not be followed by the District Court; (2) "the Supreme Court of Pennsylvania's recent minor amendment" omitted an explanatory comment disclosing the binding representations made in the PFI litigation and otherwise

5

failed to consider the additional unconstitutional components of the challenged Canon not addressed by the PFI court; and (3) the Pennsylvania Supreme Court "desires to maintain an ambiguous ethics rule to discourage judicial candidates from answering questions during political campaigns – a policy advanced by the recent minor amendment to the challenged canon without an accompanying explanatory comment to publicly disclose alleged binding representations." (A44.) Defendants moved to dismiss.

The District Court granted the motion to dismiss in an order entered on March 20, 2009. It provided a thorough explanation for this result in an accompanying memorandum. In short, the District Court found that: (1) the prospective claims requesting injunctive and declaratory relief must be dismissed for want of Article III standing because Plaintiffs failed to satisfy the "willing speaker" rule with respect to the amended Canon; (2) this lack of standing required the District Court to dismiss the prospective claims and rendered any further discussion superfluous; and (3) even if Plaintiffs otherwise possessed the standing to seek prospective relief, such claims must still be dismissed on ripeness grounds due to the absence of any official interpretation indicating that the amended "Commits Clause" prohibits the speech sought by Plaintiffs' questionnaire as well as Plaintiffs' failure to establish the existence of a willing speaker with respect to this amended Canon.[1]

---

[1] Although it also found that Plaintiffs' claims for compensatory relief were in fact justiciable, the District Court nevertheless dismissed these claims as barred by either the Eleventh Amendment or the doctrine of qualified immunity.

6

## II

Setting aside the justiciability doctrines, it is undisputed that the District Court possessed subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  We have appellate jurisdiction under 28 U.S.C. § 1291.  The District Court found that Defendants made a "facial" attack on the jurisdictional sufficiency of Plaintiffs' pleading pursuant to Federal Rule of Civil Procedure 12(b)(1).  Under this framework, a district court must accept the allegations in the complaint as true and determine whether they are sufficient to invoke its jurisdiction.  See, e.g., Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir.), cert. denied, 130 S. Ct. 1015 (2009).   We in turn exercise de novo review over a Rule 12(b)(1) dismissal.  See, e.g., id.

## III.

Ever since the United States Supreme Court's 2002 ruling in Republican Party of Minnesota v. White, 536 U.S. 765 (2002), organizations like Democracy Rising and others have filed cases across the country challenging the constitutionality of state restrictions on the speech of judicial candidates.  See, e.g., Pa. Family Inst., Inc. v. Black, 489 F.3d 156, 163 (3d Cir. 2007) (per curiam).  In addition to the underlying constitutional issues, such proceedings often raise serious justiciability problems.  See, e.g., id. at 163-64.  This current case is *not* an exception.

This Court has considered the relevant case law, the District Court's ruling, the record on appeal, and the numerous assertions of the parties themselves.  In the end, we

7

conclude that Plaintiffs' claims for prospective relief[2] were properly dismissed pursuant to the doctrines of mootness and ripeness.[3] Therefore, like the District Court, we need not (and do not) consider the merits of Plaintiffs' attack on the constitutionality of Canon 7B(1)(c) at this time.

The speech restrictions at issue here apply to the judicial candidates themselves and not to the Plaintiffs. Accordingly, the District Court appropriately turned to the "willing speaker" rule in its standing and ripeness analysis. It appears well established that, "where one enjoys the right to speak, others hold a 'reciprocal right to receive' that speech, which 'may be asserted' in court." Black, 489 F.3d at 165 (quoting Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 757 (1976)). In a recent case addressing a First Amendment challenge to Pennsylvania's judicial canons and rules, we held that the plaintiff must satisfy a "but for" test in order to benefit from the "willing speaker" rule: "As noted, there may be other reasons present but, reading the Supreme Court's cases together with our own, we hold that in order to show the existence of a

---

[2] Plaintiffs do not challenge on appeal the District Court's dismissal of their non-prospective claims on Eleventh Amendment and qualified immunity grounds.

[3] The District Court expressly found that the prospective claims must be dismissed on standing and ripeness grounds. However, it refrained from considering whether such claims were moot. Under the circumstances, this Court finds that the doctrines of mootness and ripeness provide the appropriate framework for resolving this appeal. See, e.g., Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000) ("We may affirm the District Court on any grounds supported by the record." (citing Hedges v. Musco, 204 F.3d 109, 116 (3d Cir. 2000))). Nevertheless, the District Court's reasoning with respect to standing, especially its application of the "willing speaker" concept, has relevance in the mootness inquiry.

willing speaker for the purposes of establishing third party standing, a party must at least demonstrate that but for a regulation, a speaker subject to it would be willing to speak." Id. at 167.

Likewise, "'[t]the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.'" Am. Bird Conservancy v. Kempthorne, 559 F.3d 184, 188 (3d Cir. 2009) (quoting In re Surrick, 338 F.3d 224, 230 (3d Cir. 2003)).   In particular, an amendment eliminating those aspects of a regulation challenged in the litigation actually moots the claims for relief in certain circumstances.  See, e.g., Nextel W. Corp. v. Unity Twp., 282 F.3d 257, 261-62 (3d Cir. 2002).  On the other hand, the ripeness doctrine is designed to prevent a plaintiff from prematurely litigating a case.  See, e.g., Khodara Envtl., Inc. v. Blakey, 376 F.3d 187, 196 (3d Cir. 2004).  The doctrine generally requires the court to consider such factors as whether the parties are in a sufficiently adversarial posture, whether the facts of the case are sufficiently developed to permit the court to resolve the matter in a conclusive fashion, and whether the plaintiff is sufficiently aggrieved so as to avoid the expenditure of scarce judicial resources on matters that have caused no real harm.  See, e.g., id.  The District Court in turn expressly recognized that First Amendment cases require some relaxation of the general ripeness standard..

Rejecting the contrary arguments raised by Plaintiffs on appeal, this Court finds that events that have occurred since this litigation was originally filed in the District Court

have clearly mooted Plaintiffs' claims for prospective relief. On October 16, 2007, the PFI court narrowly construed the "Commits Clause" contained in Canon 7B(1)(c), specifically eliminating the "appear to commit" language as unconstitutional. PFI II, 521 F. Supp. 2d at 372-87. In turn, the Pennsylvania Supreme Court formally deleted this problematic language on or about March 17, 2008. Instead of treating these events as at least a substantial victory in their favor, Plaintiffs have, inter alia, vigorously attacked the PFI court's reasoning, the amended Canon, and the actions (and even the motives) of Defendants and the Pennsylvania Supreme Court. While Plaintiffs especially take issue with the failure to incorporate the Massa affidavit into the amendment in some formal way (such as in an explanatory note), we note that, among other things, Defendants themselves indicate in their appellate brief that they remain bound by this affidavit. In any case, we must dismiss the claims as moot because of the clear absence of any judicial candidate who would have been willing to speak *but for* the *amended* Canon. At best, there were judicial candidates who indicated a willingness to speak but for the existence of an earlier and now defunct version of the Canon. In fact, several of these candidates expressly cited or otherwise referred to the since-deleted "appear to commit" language in justifying their refusal to answer Plaintiffs' questionnaire.

This reasoning further supports the District Court's alternative finding that the claims were not yet ripe. Citing to its earlier decision in Black, the District Court properly observed that Plaintiffs failed to present any evidence suggesting that a Pennsylvania court

10

or agency has interpreted the *current* "Commits Clause" to prohibit the speech it sought in the questionnaire. It did recognize that this Court previously stated that, "had [the plaintiff] established the existence of a willing speaker, the underlying challenge to the Canons and Rules themselves as having a chilling effect on speech would have been ripe." Black, 489 F.3d at 170. Nevertheless, it is clear that Plaintiffs here failed to establish the existence of a willing speaker with respect to the Amended Canon.

IV.

For the foregoing reasons, we will affirm the District Court's order of dismissal.